IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

MARINOS N. GELARDOS,       )
                           )
      Plaintiff,           )
                           )
v.                         )      Civil Action No. 3:15CV183–HEH
                           )
CHARLES CAMPBELL, *et al.*, )
                           )
      Defendants.          )

## MEMORANDUM OPINION
### (Granting Motion for Summary Judgment)

Marinos N. Gelardos, a Virginia inmate proceeding *pro se* and *in forma pauperis*,

filed this 42 U.S.C. § 1983 action.[1] The Court construes Gelardos's Complaint to assert

the following claims:

> Claim One:    Defendant Campbell violated Gelardos's Eighth Amendment[2] rights
> when he:
> (a) discontinued Gelardos's medications for nerve disorder, pain,
> and gastroesophageal reflux disease ("GERD") (Compl. ¶¶ 10–15,
> ECF No. 1);
> (b) failed to administer injections for soft tissue damage in
> Gelardos's knees (*id.* ¶ 21(b)); and,

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects,
> or causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law . . . .

42 U.S.C. § 1983.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual
punishments inflicted." U.S. Const. amend. VIII.

(c) failed to refer Gelardos to specialists for his medical issues (*id.* ¶ 36.)

Claim Two:    Defendant Allen violated Gelardos's rights under the Eighth Amendment by failing to refer him to specialists for his medical issues. (*Id.*)

Claim Three: Defendant Allen violated Gelardos's right to due process under the Fourteenth Amendment[3] by failing to adequately respond to his requests for medical services. (*Id.* ¶ 23.)

Claim Four:   Defendants Ray and Schilling violated Gelardos's right to due process by "fail[ing] to investigate [Gelardos's] health problems during the exhaustive remedy process." (*Id.* ¶¶ 43–44.)

Claim Five:   Defendants Ray and Schilling violated Gelardos's rights under the Eighth Amendment by "overlooking the seriousness of [his] claims in the exhaustive remedies." (*Id.* ¶ 38.)

Gelardos seeks damages, as well as declaratory and injunctive relief. (*Id.* at 5–6.)[4]

By Memorandum Opinion and Order entered on July 15, 2016, the Court granted the Motion for Summary Judgment previously filed by Defendants Ray and Schilling (collectively, "Defendants") with respect to Claim Four, but denied it without prejudice with respect to Claim Five. *Gelardos v. Campbell*, No. 3:15CV183, 2016 WL 3876434, at *4 (E.D. Va. July 15, 2016). The Court directed Defendants to resubmit a Motion for Summary Judgment addressing Claim Five within thirty days. *Id.*

This matter is before the Court on the Motion for Summary Judgment filed by Defendants on August 10, 2016 in response to the Court's July 15, 2016 Memorandum Opinion and Order with respect to Claim Five. (ECF No. 29.) Despite receiving

---

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[4] Claims One, Two and Three are not addressed in this Memorandum Opinion and Order.

*Roseboro*[5] notice and an extension of time, Gelardos has not filed a response. For the reasons stated below, the Court will grant Defendants' Motion for Summary Judgment.

## I.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "'*scintilla* of evidence'" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).

---

[5] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

3

In support of their Motion for Summary Judgment, Defendants rely upon the evidence they submitted in support of their previous Motion for Summary Judgment. That evidence includes:   (1) an affidavit from Defendant Ray (Mem. Supp. Mot. Summ. J. Ex. 1 ("Ray Aff."), ECF No. 15–1); (2) a copy of Virginia Department of Corrections ("VDOC") Operating Procedure § 720.1 (*id.* Encl. A. ("Operating Procedure § 720.1")); (3) copies of grievances material submitted by Gelardos (*id.* Encl. B); and, (4) an affidavit from Defendant Schilling (Mem. Supp. Mot. Summ. J. Ex. 2 ("Schilling Aff."), ECF No. 15–2).

At this stage, the Court is tasked with assessing whether Gelardos "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added).  With respect to Gelardos's Complaint, a notary public's seal appears on the sixth page; however, the Complaint is not admissible for purposes of summary judgment because Gelardos has not sworn to its contents under penalty of perjury, and there is no indication that the notary public administered an oath to Gelardos. *See McCoy v. Robinson*, No. 3:08CV555, 2010 WL 3735128, at *2 (E.D. Va. Sept. 22, 2010) (alterations in original) ("[M]erely notarizing [a] signature does not transform a document into [an] affidavit that may be used for summary judgment purposes." (quoting *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306-07 (5th Cir. 1998))).

Gelardos's complete failure to present any admissible evidence to counter Defendants' Motion for Summary Judgment permits the Court to rely solely on Defendants' evidence in deciding the Motion for Summary Judgment. *See Forsyth v.*

*Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))). Accordingly, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Gelardos.

## II.    UNDISPUTED FACTS

As the Warden of St. Brides Correctional Center ("SBCC"), Ray was "responsible for the day-to-day operations of [the] institution." (Ray Aff. ¶ 4.) Ray "ha[d] no responsibility or supervision of the actual administration of medical or mental health services provided by the health care providers at SBCC." (*Id.*)

Schilling is the Director of Health Services for the Virginia Department of Corrections ("VDOC"). (Schilling Aff. ¶ 1.) As such, Schilling "manage[s] the overall operation of the VDOC's Health Services." (*Id.* ¶ 7.) "In this capacity, [he] issue[s] Level II responses to offender grievances concerning medical treatment." (*Id.*) Schilling is "not a medical doctor . . . . [and] do[es] not make decisions about offenders' medical treatment." (*Id.* ¶ 4.) Schilling "do[es] not determine whether an offender is referred to a specialist for evaluation." (*Id.*) Instead he "rel[ies] on the professional judgment of doctors and nurses and do[es] not substitute [his] own judgment for their professional opinions concerning an offender's condition or treatment." (*Id.*) Schilling "do[es] not intervene in medical decisions." (*Id.* ¶ 5.) Rather, he "ensures compliance with the medical operating procedures at the institutional level." (*Id.*)

5

Operating Procedure § 720.1 sets forth the medical services available to offenders in the custody of the VDOC.  (Operating Procedure § 720.1.)  Virginia "provides trained medical and mental health care professionals to provide offenders quality medical and mental health care at correctional facilities."  (Ray Aff. ¶ 5.)  All offenders, including those at SBCC, have access to medical and mental health care services and can seek "appropriate attention and care from the health care providers at [their] institution[s]."  (Schilling Aff. ¶ 6; *see also* Ray Aff. ¶ 5.)  Health care providers "evaluate the offender's complaint and determine what treatment, if any, is necessary."  (Ray Aff. ¶ 5; *see also* Schilling Aff. ¶ 6.)

The VDOC "Offender Grievance Procedure is a mechanism for offenders to resolve complaints, appeal administrative decisions and challenge the substance of procedures."  (Ray Aff. ¶ 7.)  "All issues are grievable except those pertaining to policies, procedures and decisions of the Virginia Parole Board, disciplinary hearings, State and Federal court decisions, laws and regulations, and matters beyond the control of the VDOC."  (*Id.*)  Offenders are "entitled to use the grievance procedure to resolve problems."  (*Id.*)

Gelardos arrived at SBCC on April 8, 2014.  (Ray Aff. ¶ 3.)  During his incarceration at SBCC, Gelardos has "submitted several grievances regarding his medical issues."  (Schilling Aff. ¶ 8; *see also* Ray Aff. Encl. B.)  Specifically, Gelardos has "filed numerous complaints and grievances regarding injections and braces for his knees, as well as medication for reflux disease."  (Ray Aff. ¶ 8; *see also id.* Encl. B.)

On May 7, 2014, Gelardos submitted a grievance in which he complained that Dr. Campbell had denied him the injection treatments for shoulder and knee pain that he had been receiving prior to becoming incarcerated. (Ray Aff. Encl. B at 10.)[6] An individual responded on behalf of Ray, noting that an investigation of Gelardos's medical file revealed that Dr. Campbell evaluated Gelardos's knees and shoulders on April 22, 2014, prescribed pain medication, and demonstrated how to complete physical therapy exercises. (*Id.* at 12.) Gelardos's grievance was unfounded because Dr. Campbell had the authority to make clinical decisions regarding health care provided to offenders. (*Id.*) Schilling concurred with this response. (*Id.* at 14.)

On May 7, 2014, Gelardos submitted another grievance, complaining that Dr. Campbell "took [him] off of numerous medications and changed a few others." (*Id.* at 16.) Gelardos asked to be placed back on the medications that he had been taking. (*Id.*) An individual responded on behalf of Ray, noting that on April 22, 2014, Dr. Campbell started Gelardos on a Neurontin taper and also prescribed Tegretol and Robaxin for pain. (*Id.* at 18.) Thus, Gelardos's grievance was unfounded because Dr. Campbell, as the Health Authority at SBCC, was responsible for determining the type of treatment Gelardos would receive. (*Id.*) Schilling concurred with this response. (*Id.* at 19.)

On May 13, 2014, Gelardos submitted a grievance complaining that he should not have been charged $5.00 for a medical visit because he did not ask Dr. Campbell to change his medications. (*Id.* at 21.) Gelardos stated that he had been experiencing "numerous" side effects from the change. (*Id.*) Ray, or an individual authorized to

[6] The Court utilizes the pagination assigned to this exhibit by the CM/ECF docketing system. The Court corrects the capitalization in the quotations from this exhibit.

7

respond on Ray's behalf, found that Gelardos's grievance was unfounded because the $5.00 co-pay was applied per policy. (*Id.* at 23.) Schilling upheld this response. (*Id.* at 24.)

On July 23, 2014, Gelardos submitted a grievance in which he complained that Zantac was not an effective treatment for his GERD, but that Dr. Campbell had discontinued his Prilosec prescription and replaced it with Zantac anyway. (*Id.* at 26.) Ray responded to Gelardos's grievance after investigating Gelardos's medical file. (*Id.* at 28.) Specifically, Ray, or an individual authorized to respond on Ray's behalf, noted that Dr. Campbell had "prescribed Prilosec alternating with Zantac" because Prilosec was not to be used for "long periods of time." (*Id.*) Schilling concurred with the response. (*Id.* at 29.)

On August 6, 2014, Gelardos submitted a grievance stating "that the only treatment that w[ould] get [his] knees to stop locking up is the injection treatments." (*Id.* at 31.) Gelardos complained that Mobic was not enough to help his pain and asked to receive injections or knee braces. (*Id.*) After reviewing Gelardos's medical file, Ray, or an individual authorized to respond on Ray's behalf, held that his grievance was unfounded because Dr. Campbell had "determined that at this time there [was] no clinical indication for an offsite referral or knee braces." (*Id.* at 33.) Schilling concurred. (*Id.* at 34.)

On October 4, 2014, Gelardos submitted a grievance complaining that his GERD had progressed and asking to see an ear, nose, and throat specialist for digestive issues. (*Id.* at 36.) Ray, or an individual authorized to act on his behalf, investigated Gelardos's

8

complaint and noted that Gelardos had been seen by Dr. Campbell on October 8, 2014,

for his GERD. (*Id.* at 38.) At that time, Dr. Campbell increased Gelardos's medication

and determined that there was "no clinical indication for an offsite referral." (*Id.*) Ray or

his authorized designee determined that Gelardos's grievance was unfounded (*id.*), and

Schilling upheld that response (*id.* at 39).

On October 28, 2014, Gelardos submitted a grievance complaining that Dr.

Campbell "ke[pt telling [him] that he sees no reason for [Gelardos] to have [knee]

braces." (*Id.* at 42.) Gelardos asked for knee braces, stating that prior to incarceration

doctors at MCV Hospital "had [him] on a treatment of a series of injections and . . . knee

braces." (*Id.*) After an investigation, Ray, or an individual authorized to act on his

behalf, concluded that on October 8, 2014, Dr. Campbell told Gelardos "that knee braces

[were] not clinically indicated at t[hat] time." (*Id.* at 44.) Gelardos's grievance was

determined to be unfounded (*id.*), and Schilling upheld that response (*id.* at 45).

On December 6, 2014, Gelardos complained that he was seen by Dr. Campbell on

October 21, 2014 for his "throat problem" and that all Dr. Campbell did was change his

medication from Zantac to Prilosec. (*Id.* at 47.) Gelardos stated that his GERD had

progressed and that the Prilosec was not working. (*Id.*) In response, an individual

responding on behalf of Ray noted that Gelardos's medical file indicated that Gelardos

was seen by Dr. Campbell on October 8, 2014 for GERD. (*Id.* at 49.) Dr. Campbell

ordered a blood test to determine if H. Pylori was contributing to Gelardos's symptoms.

(*Id.*) Gelardos did not appear for the blood test on October 12, 2014, and it was

rescheduled for October 20, 2014. (*Id.*) Gelardos saw Dr. Campbell on October 28, 2014

for a chronic care visit, at which time Dr. Campbell informed Gelardos that his blood test had been negative. (*Id.*) Ray determined that Gelardos's grievance was unfounded (*id.*), and Schilling upheld that response (*id.* at 50).

On each occasion that Gelardos filed a grievance regarding his medical care, "Gelardos['s] medical record was reviewed and his case was discussed with SBCC medical staff." (Ray Aff. ¶ 8; *see also* Schilling Aff. ¶ 8.) "Upon investigation, it was determined that Gelardos was being closely followed by medical staff at [SBCC] and there ha[d] been no violation of policy." (Schilling Aff. ¶ 8.) In responding, Ray "rel[ied] on the professional judgment of doctors, nurses, and other health care providers and d[id] not substitute [his] own judgment for the health care providers' professional opinions . . . ." (Ray Aff. ¶ 9.) Furthermore, Schilling "reviewed all information available to [him] when [he] considered Gelardos' grievance appeals." (Schilling Aff. ¶ 9.)

## III.    EIGHTH AMENDMENT

In Claim Five, Gelardos asserts that Defendants violated his rights under the Eighth Amendment by "overlooking the seriousness of [his] claims in the exhaustive remedies." (Compl. ¶ 38.)

To survive a motion for summary judgment on an Eighth Amendment claim, Gelardos must demonstrate that Defendants acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)

(quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to

demonstrate that a particular defendant actually knew of and disregarded a substantial

risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"Deliberate indifference is a very high standard—a showing of mere negligence will not

meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*,

429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for
> denying an inmate humane conditions of confinement unless the official
> knows of and disregards an excessive risk to inmate health or safety; the
> official must both be aware of facts from which the inference could be
> drawn that a substantial risk of serious harm exists, and he must also draw
> the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a

substantial risk of harm is not enough. The prison official must also draw the inference

between those general facts and the specific risk of harm confronting the inmate."

*Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837).

Thus, to survive a motion for summary judgment under the deliberate indifference

standard, a plaintiff "must show that the official in question subjectively recognized a

substantial risk of harm . . . . [and] that the official in question subjectively recognized

that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v.

Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340

n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

Defendants do not contest that Gelardos's GERD, knee pain, and shoulder pain were "objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Gelardos, however, demonstrates no deliberate indifference to his medical needs by Defendants. The record conclusively demonstrates that Defendants reasonably responded to Gelardos's grievances regarding his medical care, noting in each response that Gelardos was under the care of Dr. Campbell and that Dr. Campbell had the authority to make clinical decisions regarding offenders' health care. *See Iko*, 535 F.3d at 242 (omission in original) ("'If a prisoner is under the care of medical experts . . ., a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.'" (quoting *Spruill v. Gillis*, 382 F.3d 218, 236 (3d Cir. 2004))). To the extent Gelardos disagrees with Dr. Campbell's assessment and the proper course of action for treating his various ailments, Gelardos's disagreement fails to demonstrate deliberate indifference by Defendants, who had no medical training and could rely on Dr. Campbell's medical judgment. *See id.* Moreover, because Defendants

12

responded reasonably to Gelardos's grievances regarding his medical care, they cannot be found to have acted with a sufficiently culpable state of mind to establish deliberate indifference. *See Brown*, 240 F.3d at 389 (alteration in original) (citations omitted) (internal quotation marks omitted) (holding that "an official who responds reasonably to a known risk has not disregard[ed] an excessive risk to inmate health or safety . . . and has therefore not acted with deliberate indifference"). Gelardos fails to demonstrate that Defendants acted with deliberate indifference to Gelardos's medical needs. Accordingly, Claim Five will be dismissed.

## IV.   CONCLUSION

For the forgoing reasons, Defendants' Motion for Summary Judgment (ECF No. 29) will be granted. Claim Five will be dismissed.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: Nov. 10 2016
Richmond, Virginia

13