IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARINOS N. GELARDOS,           )
                                )
       Plaintiff,               )
                                )
v.                              )         Civil Action No. 3:15CV183-HEH
                                )
CHARLES CAMPBELL, et al.,       )
                                )
       Defendants.              )

## MEMORANDUM OPINION
(Granting Motion for Summary Judgment)

Marinos N. Gelardos, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The Court construes Gelardos's Complaint to assert the following claims:

Claim One:   Defendant Campbell violated Gelardos's Eighth Amendment[2] rights when he:
(a) discontinued Gelardos's medications for nerve disorder, pain, and gastroesophageal reflux disease ("GERD") (Compl. ¶¶ 10–15, ECF No. 1);
(b) failed to administer injections for soft tissue damage in Gelardos's knees (*id.* ¶ 21(b)); and,

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

    (c) failed to refer Gelardos to specialists for his medical issues (*id.* ¶ 36.)

Claim Two: Defendant Allen violated Gelardos's rights under the Eighth Amendment by failing to refer him to specialists for his medical issues. (*Id.*)

Claim Three: Defendant Allen violated Gelardos's right to due process under the Fourteenth Amendment[3] by failing to adequately respond to his requests for medical services. (*Id.* ¶ 23.)

Claim Four: Defendants Ray and Schilling violated Gelardos's right to due process by "fail[ing] to investigate [Gelardos's] health problems during the exhaustive remedy process." (*Id.* ¶¶ 43–44.)

Claim Five: Defendants Ray and Schilling violated Gelardos's rights under the Eighth Amendment by "overlooking the seriousness of [his] claims in the exhaustive remedies." (*Id.* ¶ 38.)

Gelardos seeks damages, as well as declaratory and injunctive relief. (*Id.* at 5–6.)

By Memorandum Opinion and Order entered on July 15, 2016, the Court granted the Motion for Summary Judgment previously filed by Defendants Ray and Schilling with respect to Claim Four, but denied it without prejudice with respect to Claim Five. *Gelardos v. Campbell*, No. 3:15CV183–HEH, 2016 WL 3876434, at *4 (E.D. Va. July 15, 2016). The Court directed Defendants Ray and Schilling to resubmit a Motion for Summary Judgment addressing Claim Five within thirty days. *Id.* By Memorandum Opinion and Order entered on November 10, 2016, the Court granted Defendants Ray and Schilling's renewed Motion for Summary Judgment with respect to Claim Five. *Gelardos v. Campbell*, No. 3:15CV183–HEH, 2016 WL 6662691, at *6 (E.D. Va. Nov. 10, 2016).

---

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

Defendants Campbell and Allen (collectively, "Defendants") filed a Motion for Summary Judgment on December 6, 2016. (ECF No. 50.) By Memorandum Order entered on February 13, 2017, the Court denied their Motion without prejudice, noting that "[a]lthough Defendants Campbell and Allen seek dismissal of all of Gelardos's claims against them with prejudice, they have inexplicably failed to address Claims Two and Three, and this Court declines to do so in the first instance." (ECF No. 55, at 2–3.) The Court directed Defendants to resubmit their Motion for Summary Judgment within thirty days.

This matter is now before the Court on the Renewed Motion for Summary Judgment filed by Defendants on March 2, 2017. (ECF No. 57.) Gelardos has filed a Response. (ECF No. 60.) For the reasons stated below, the Court will grant Defendants' Motion for Summary Judgment.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is

properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "'*scintilla* of evidence'" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).

In support of their Motion for Summary Judgment, Defendants rely upon the evidence they submitted in support of their previous Motion for Summary Judgment. That evidence includes: (1) a declaration from Defendant Campbell (Mem. Supp. Renewed Mot. Summ. J. Attach. 1 ("Campbell Decl."), ECF No. 51–1); and, (2) copies of Gelardos's medical records (*id.* Ex. 1–A ("Medical Records"), ECF No. 51–2).

At this stage, the Court is tasked with assessing whether Gelardos "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). Gelardos did not attach any supporting evidence to his response to Defendants' Motion for Summary Judgment. With respect to Gelardos's Complaint, a notary public's seal appears on the sixth page; however, the Complaint is not admissible for purposes of summary judgment because Gelardos has not sworn to its contents under penalty of perjury, and there is no indication that the notary public administered an oath

to Gelardos. *See McCoy v. Robinson*, No. 3:08CV555, 2010 WL 3735128, at *2 (E.D. Va. Sept. 22, 2010) (alterations in original) ("[M]erely notarizing [a] signature does not transform a document into [an] affidavit that may be used for summary judgment purposes." (quoting *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306–07 (5th Cir. 1998))).

Gelardos's complete failure to present any admissible evidence to counter Defendants' Motion for Summary Judgment permits the Court to rely solely on Defendants' evidence in deciding the Motion for Summary Judgment. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))). Accordingly, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Gelardos.

## II. UNDISPUTED FACTS

Gelardos arrived at St. Brides Correctional Center ("SBCC") on April 7, 2014. (Campbell Decl. ¶ 5(b) (citing Medical Records at 238).) Dr. Campbell saw Gelardos on April 8, 2014. (Campbell Decl. ¶ 5(b) (citing Medical Records at 235).) At that time, Dr. Campbell continued Gelardos on the following medications: Gabapentin (Neurontin), Metformin, Meloxicam, Cyclobenzaprine, Omeprazole, Buproprion, Buspirone, Lisinopril, Amitriptyline, and Lovastatin. (Medical Records at 235.)

5

Dr. Campbell saw Gelardos on April 22, 2014 for a chronic care follow-up. (Campbell Decl. ¶ 5(c) (citing Medical Records at 234).) Gelardos told Dr. Campbell that Robaxin and Tegretol affect his GERD. (Medical Records at 234.) However, Gelardos then stated, "I'll be ok put me on it I need something." (*Id.*) Gelardos also requested insoles for his shoes. (*Id.*) Dr. Campbell noted Gelardos's "reports of mild pain in the knees, and left shoulder pain, with no swelling (edema)." (Campbell Decl. ¶ 5(c) (citing Medical Records at 234).) Gelardos's knees had full range of motion and no swelling. (Campbell Decl. ¶ 5(c).) His left shoulder had decreased range of motion. (*Id.*) Dr. Campbell told Gelardos that "per DOC policy . . . Tylenol must be purchased from the commissary, as well as Motrin . . . ." (*Id.*) Dr. Campbell prescribed Tegretol, Tylenol, Metformin, Robaxin for pain, and Zantac for GERD. (*Id.* (citing Medical Records at 234).) He discontinued Gelardos's Flexeril and Prilosec prescriptions, and "ordered a taper of Gabapentin (Neurontin) followed by discontinuation of Gabapentin." (*Id.*) Neurontin is "not FDA-approved for [nerve pain] and . . . is frequently abused in prisons." (*Id.* ¶ 4.) Dr. Campbell also determined that Neurontin was "inappropriate" for Gelardos because of his "history of illicit drug abuse." (*Id.*)

Gelardos was issued gel insoles for his shoes on April 30, 2014. (Medical Records at 73.)

On May 14, 2014, Gelardos complained to H. Evans, RN, that he was experiencing stomach pains from his Norvasc, Robaxin, and Tegratol prescriptions. (Medical Records at 229.) Nurse Evans referred Gelardos to Dr. Campbell for evaluation. (*Id.*)

Dr. Campbell saw Gelardos for his complaint that Tegretol and Norvasc were causing side effects on June 3, 2014. (Campbell Decl. ¶ 5(k) (citing Medical Records at 227).) Dr. Campbell noted that Gelardos had "decreased range of motion in the lumbar spine, normal gastrointestinal functioning, no apparent distress, and normal gait and balance." (*Id.*) Dr. Campbell discontinued Gelardos's prescriptions for Robaxin and Tegretol, and prescribed Depakote, Zantac, and twenty-one days' worth of Tylenol. (*Id.*)

On June 19, 2014, Gelardos submitted an emergency grievance in which he complained that he had been experiencing heartburn and vomiting. (Medical Records at 226.) Nurse Evans referred Gelardos to Defendant Allen "for proof of indigent status to get commissary medications for this condition from medical." (Campbell Decl. ¶ 5(l) (citing Medical Records at 226).)

Dr. Campbell saw Gelardos again on July 15, 2014. (Campbell Decl. ¶ 5(n) (citing Medical Records at 224).) Gelardos complained that his Zantac prescription was not effective and that he had pain in both knees. (*Id.*) Dr. Campbell examined Gelardos and determined that he was "in no apparent distress, without gastrointestinal symptoms, without swelling of the knees, and with full range of motion." (*Id.*) Dr. Campbell "ordered Prilosec for sixty days, then Zantac, Mobic for 30 days for pain and inflammation . . . then Tylenol for 14 days, then repeat." (*Id.*) That same day, Dr. Campbell, "discontinued Mobic because an NSAID allergy was listed in Mr. Gelardos's chart, and changed this to Tylenol for ninety days." (*Id.*)

On August 8, 2014, Gelardos saw a nurse after he submitted an emergency grievance regarding his GERD. (Campbell Decl. ¶ 5(p) (citing Medical Records at 220).)

Gelardos complained of "burning in the back of his throat [and] sometimes the vomit feeling comes up to his throat [and] back down to stomach." (Medical Records at 220.) He stated that Zantac did not work and requested Prilosec. (*Id.*) The nurse noted that Dr. Campbell had seen Gelardos on July 15, 2014, and had counseled him on his medication regimen. (*Id.*) Gelardos's throat and lymph nodes appeared normal. (*Id.*)

Gelardos received a back brace on August 15, 2014. (Campbell Decl. ¶ 5(q) (citing Medical Records at 70, 219).)

On August 19, 2014, Gelardos "complained of being taken off of Neurontin for nerve pain." (Campbell Decl. ¶ 5(r) (citing Medical Records at 101).) He also complained about being taken off Prilosec, but admitted that he was "still getting it at least temporarily." (Medical Records at 101.)

Dr. Campbell saw Gelardos on August 25, 2014 for Gelardos's GERD. (Campbell Decl. ¶ 5(s) (citing Medical Records at 218).) Gelardos told Dr. Campbell that he had "a constant burning in the back of [his] throat that won't go away." (Medical Records at 218.) Gelardos said that Prilosec was "doing its job [and he didn't] have the heartburn anymore like with the Zantac." (*Id.*) Dr. Campbell increased Gelardos's Prilosec prescription. (Campbell Decl. ¶ 5(s).)

On September 2, 2014, Nurse Evans saw Gelardos with complaints of back pain after a fall. (Medical Records at 217.) Gelardos told Nurse Evans that wearing his back brace helped "tremendously." (*Id.*) Nurse Evans noted that Gelardos was already receiving medication for pain. (*Id.*) Gelardos was given three days off work because of his back injury. (*Id.*)

On September 10, 2014, Gelardos refused a nurse sick call regarding his request for bilateral knee braces. (Campbell Decl. ¶ 5(u) (citing Medical Records at 216).) Gelardos "claimed that he had a cane in the past and that he would handle the issue without a co-pay by complaining." (Campbell Decl. ¶ 5(u) (citing Medical Records at 69).)

On September 19, 2014, Gelardos asked for a knee brace. (Medical Records at 216.) Gelardos complained of heartburn and nausea, as well as knee pain. (*Id.* at 215–16.) Gelardos "had full range of motion in both knees, with no swelling or discoloration." (Campbell Decl. ¶ 5(v) (citing Medical Records at 215).) He was prescribed milk of magnesia for nausea and was provided education on decreasing the size of his meals and avoiding red sauce, spicy foods, and eating before bed. (*Id.* (citing Medical Records at 215).)

On October 7, 2014, Gelardos refused treatment for GERD. (Campbell Decl. ¶ 5(w) (citing Medical Records at 214).)

On October 8, 2014, Dr. Campbell saw Gelardos for his GERD. (Campbell Decl. ¶ 5(x) (citing Medical Records at 214).) Gelardos said that he had a "constant burning in the back of his throat." (Medical Records at 214.) It was better with Prilosec but still present. (*Id.*) Gelardos requested knee braces for both knees so he could go walking. (*Id.*) Dr. Campbell "counseled that knee braces were not clinically indicated in [his] judgment, but ordered knee x-rays." (Campbell Decl. ¶ 5(x) (citing Medical Records at 214).) The x-rays were completed on October 15, 2014. (*Id.* (citing Medical Records at 213).)

Dr. Campbell saw Gelardos for a chronic care follow-up on October 28, 2014. (Campbell Decl. ¶ 5(y) (citing Medical Records at 212).) Gelardos complained that he had constant pain in his knees and lower back, and that knee braces would help. (Medical Records at 212.) Dr. Campbell "ordered additional medications at that time and ordered testing for Mr. Gelardos's diabetes." (Campbell Decl. ¶ 5(y).)

On March 9, 2015, Gelardos "threatened medical staff with physical harm and stated that no nurse was to come near him." (*Id.* ¶ 5(z) (citing Medical Records at 209).)

On April 22, 2015, Dr. Campbell saw Gelardos for a chronic care follow-up. (Campbell Decl. ¶ 5(bb) (citing Medical Records at 205).) Dr. Campbell prescribed several medications, including Prilosec and Tylenol. (Campbell Decl. ¶¶ 5(bb) (citing Medical Records at 205).)

On April 23, 2015, Gelardos submitted an Inmate Request Form to the medical department, stating that Defendant Allen had spoken with medical about ordering more orthopedic shoe inserts for Gelardos. (Medical Records at 65.) Gelardos received the new inserts on May 8, 2015. (*Id.* at 64.)

On May 15, 2015, Gelardos was issued a back brace. (Medical Records at 63, 202.)

On July 17, 2015, Gelardos refused his chronic care appointment. (Campbell Decl. ¶ 5(ff) (citing Medical Records at 202).)

On October 28, 2015, Dr. Campbell saw Gelardos for a chronic care follow-up. (Campbell Decl. ¶ 5(gg) (citing Medical Records at 201).) Gelardos did not have any

complaints. (Medical Records at 201.) Dr. Campbell prescribed several medications, including Prilosec and Tylenol. (*Id.*)

### III. EIGHTH AMENDMENT

To survive a motion for summary judgment on an Eighth Amendment claim, Gelardos must demonstrate that Defendants acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference

11

between those general facts and the specific risk of harm confronting the inmate."
*Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

### A. Discontinuation of Medications

In Claim One (a), Gelardos alleges that Dr. Campbell was deliberately indifferent to his medical needs because he discontinued Gelardos's medications for nerve disorder, pain, and GERD. (Compl. ¶¶ 10–15.) Specifically, Gelardos faults Dr. Campbell for discontinuing his prescriptions for Neurontin and Prilosec. (*Id.* ¶ 10.) "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free

from judicial interference, except in the most extreme circumstances." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Gelardos demonstrates no extreme circumstances here. *See, e.g., Martinez v. Mancusi*, 443 F.2d 921, 923–25 (2d Cir. 1970) (granting relief when prison doctor prematurely forced prisoner plaintiff, without hospital ordered pain medication, to walk out of the hospital and stand for meals after plaintiff had leg surgery for which hospital specialist had ordered plaintiff to lie flat and not to walk).

On April 22, 2014, Dr. Campbell discontinued Gelardos's Prilosec prescription, and "ordered a taper of Gabapentin (Neurontin) followed by discontinuation of Gabapentin." (Campbell Decl. ¶ 5(c) (citing Medical Records at 234).) Neurontin is "not FDA-approved for [nerve pain] and . . . is frequently abused in prison." (Campbell Decl. ¶ 4.) Dr. Campbell determined that Neurontin was not appropriate for Gelardos because of his "history of illicit drug use." (*Id.*)

Gelardos fails to demonstrate that Dr. Campbell's decisions constitute deliberate indifference. In assessing a claim of deliberate indifference, the Court must also consider the totality of medical care provided, rather than simply the additional treatment the inmate was denied. *See Walkers v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (citing *Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999)). During the time when he provided treatment to Gelardos, Dr. Campbell prescribed several medications for Gelardos's conditions. (Medical Records at 201, 205, 212, 217, 224, 227.) Moreover, on July 15, 2014, Dr. Campbell again prescribed Prilosec to Gelardos. (Campbell Decl. ¶ 5(n).) At one point, Dr. Campbell increased Gelardos's Prilosec prescription. (Campbell Decl. ¶ 5(s).)

13

Beginning in April of 2014 and regularly thereafter, Dr. Campbell prescribed various medications to treat Gelardos's pain and GERD. Given these circumstances, Gelardos fails to demonstrate that Dr. Campbell acted with deliberate indifference by not prescribing Neurontin and by temporarily discontinuing his Prilosec prescription. *See Diaz v. Turner*, 160 F. App'x 360, 362–63 (5th Cir. 2005) (finding inmate's disagreement with decision by medical personnel not to provide him with nonprescription medication on demand fails to constitute deliberate indifference to medical needs); *Reyes v. Gardener*, 93 F. App'x 283, 285 (2d Cir. 2004) (concluding defendants' decision to prescribe Tylenol or Motrin to manage prisoner's pain and to administer Demerol or Morphine only when necessary did not constitute deliberate indifference). "It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled, but life is not so accommodating. Those recovering from even the best treatment can experience pain." *Snipes*, 95 F.3d at 592. As Gelardos has failed to demonstrate that Dr. Campbell acted with deliberate indifference to his pain and GERD, Claim One (a) will be dismissed.[4]

### B. Knee Injections

In Claim One (b), Gelardos contends that Dr. Campbell failed to administer injections for soft tissue damage in Gelardos's knees. (Compl. ¶ 21(b).) Gelardos,

---

[4] In his Response, Gelardos alleges that after he was transferred from SBCC to Haynesville Correctional Center, Dr. Levine re-prescribed Neurontin. (Resp. 1.) However, if an inmate's "disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a *doctor* disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *see United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011).

14

however, fails to direct the Court to any evidence that suggests the lack of such injections exposed him to a substantial risk of serious harm. Moreover, Gelardos fails to demonstrate that Dr. Campbell was deliberately indifferent to his knee condition by failing to administer injections. *See Farmer*, 511 U.S. at 837. At most, Gelardos states a disagreement with Dr. Campbell with respect to the appropriate course of treatment for his knees. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6). Accordingly, Claim One (b) will be dismissed.[5]

### C. Failure to Refer to Specialists

In Claims One (c) and Two, Gelardos faults Dr. Campbell and Defendant Allen for failing to refer him to specialists for his medical issues. (Compl. ¶ 36.) Gelardos, however, fails to direct the Court to any evidence that suggests the lack of such referrals exposed him to a substantial risk of serious harm. Moreover, Gelardos fails to demonstrate that Dr. Campbell and Defendant Allen were deliberately indifferent to his medical conditions by failing to refer him to specialists for those symptoms. *See Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) ("Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing." (citing *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992))). Again, at most, Gelardos states a disagreement with Dr. Campbell and Defendant Allen with respect to the appropriate course of treatment for his

---

[5] In his Response, Gelardos alleges that the medical providers at Sussex I State Prison, his current place of incarceration, have given him injections in his right knee. (Resp. 2–3.) Again, however, the fact that these medical providers may have disagreed with Dr. Campbell's professional judgment fails to support an Eighth Amendment claim. *See White*, 897 F.2d at 110; *Clawson*, 650 F.3d at 538.

15

conditions. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6). Accordingly, Claims One (c) and Two will be dismissed.

## IV. DUE PROCESS

In Claim Three, Gelardos contends that Defendant Allen violated Gelardos's right to due process under the Fourteenth Amendment by failing to adequately respond to his requests for medical services. (Compl. ¶ 23.) Gelardos contends that Defendant Allen responded "with answers that [did] not coincide with the request." (*Id.*) However, "there is no constitutional right to participate in grievance proceedings." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Because Gelardos enjoys no constitutional right to participate in grievance proceedings, his allegation that Defendant Allen improperly responded to his requests is legally frivolous. *See Banks v. Nagle*, Nos. 3:07CV419–HEH, 3:09CV14, 2009 WL 1209031, at *3 (E.D. Va. May 1, 2009). Moreover, simply "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation." *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007). Accordingly, Claim Three will be dismissed.

## V. OUTSTANDING MOTIONS

Gelardos has filed two motions requesting that the Court revoke Dr. Campbell's license to practice medicine ("Motions Requesting Revocation of Dr. Campbell's Medical License," ECF Nos. 53, 54). The Court has no authority to provide the relief Gelardos seeks, as "[m]edical licensing is a matter of state law." *Jones v. Joubert*, No. CCB–14–2391, 2015 WL 5136355, at *1 n.2 (D. Md. Aug. 31, 2015) (informing

inmate that, to the extent he sought revocation of defendants' medical licenses, he could seek relief by contacting the state Board of Physicians or Board of Nursing). Accordingly, Gelardos's Motions Requesting Revocation of Dr. Campbell's Medical License (ECF Nos. 53, 54) will be denied.

## VI. CONCLUSION

For the forgoing reasons, Defendants' Motion for Summary Judgment (ECF No. 57) will be granted. Claims One, Two, and Three will be dismissed. Gelardos's Motions Requesting Revocation of Dr. Campbell's Medical License (ECF Nos. 53, 54) will be denied. The action will be dismissed.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
Date: May 12 2016
UNITED STATES DISTRICT JUDGE
Richmond, Virginia

17